Rockingham
No. 79-318

ANNA L. TRAHAN

v.

GEORGE TRAHAN & a.

March 13, 1980

*Shaines, Madrigan & McEachern,* of Portsmouth (*Branch S. Sanders* orally), for the plaintiff.

*Barrett & McNeill,* of Durham (*John T. Barrett* orally), for the defendants.

GRIMES, C.J. In 1963, the plaintiff and her husband, William Lamprey, together with the defendants, acquired as tenants in common a parcel of land located in Kingston. The defendants, George and Dorothy Trahan, are the plaintiff's son and daughter-in-law. At the time of purchase, there was a camp on the premises in which the defendants lived and to which they made certain improvements. The plaintiff and her husband moved a house trailer onto the premises and lived in it, also making improvements. In September 1965, the four conveyed the property to themselves as joint tenants. The parties presented conflicting evidence as to the reason for creating the joint tenancy. The plaintiff contended that it was to keep the title out of her husband's family if he died, while the defendants claimed that it was in recognition of their improvements to the realty.

In January 1973, the plaintiff and her husband were divorced. The divorce decree provided *inter alia* that: "[t]he real estate situate in Kingston, standing in the name of George Trahan, Dorothy Trahan, Anna Lamprey and William Lamprey is disencumbered of all right, title and interest of William Lamprey therein." Thereafter, the plaintiff resumed her maiden name and together with George and Dorothy, continued to live on the property as before.

There came a time when all did not go well between them, and in December 1975, the plaintiff filed a petition to partition. The matter was referred to a Master (*Nicholas Copadis*, Esq.) who determined the respective interests of the parties to be one-third each, with certain adjustments for improvements. On May 31, 1977, *Perkins*, J., made an order in accordance with the recommendation. No exception was taken and no appeal resulted.

A commission was appointed to partition the property. Upon its request for clarification of the order, the trial court determined that the interest of the defendants could be considered as one unit of two-thirds so that the property could be divided into two parts rather than three. The plaintiff did not object.

In May 1978, the commission filed its report with the court, to which the defendants objected but the plaintiff did not. In June 1978, however, she objected to the defendant's motion to set aside the report.

In September 1978, plaintiff's counsel withdrew and the plaintiff, through new counsel, filed a "Petition to Reopen and to Quiet Title pursuant to RSA 498:5-a." In this petition, the plaintiff claimed that a mistake had been made in dividing the property in thirds instead of one-half to her and one-fourth to each of the defendants. After a hearing, the petition to reopen was denied on February 8, 1979, by *Randall*, J., on the recommendation of the master. The plaintiff's exceptions were transferred by *Mullavey*, J.

■ The only issue before us is whether the denial of the motion to reopen was error. The issue whether the plaintiff should have received a one-half interest in the realty, instead of one-third, is foreclosed by the failure of the plaintiff to except to, and appeal from, that order. *State v. Josselin*, 119 N.H. 936, 409 A.2d 1336 (1979); *Sperl v. Sperl*, 119 N.H. 818, 408 A.2d 422 (1979).

■ We cannot say on the record before us that the trial court abused its discretion by denying the petition to reopen. The plaintiff failed to object to or appeal from the order of May 31,

1977, a final order. Moreover, she also failed to object or except to the clarification of that order allowing the defendants' interest to be considered as one unit of two-thirds. Furthermore, when the partition commission divided the property one-third to her and two-thirds to the defendants with adjustments for improvements, she not only did not object but rather, in June 1978, objected to the defendants' motion to set aside the report. It was not until October 1978 that she, with new counsel, displayed any dissatisfaction with the order of May 31, 1977. Under these circumstances, we find no abuse of discretion in the court's refusal to reopen the matter.

Moreover, it is by no means clear, as the plaintiff suggests, that the order of May 31, 1977, was based on inaccurate information or was contrary to the intention of the parties. There was evidence that title was taken in the four names as joint tenants in recognition of the improvements which had been made by George. If William Lamprey's interest had been extinguished by death rather than by divorce, the surviving joint tenants would each have possessed a one-third interest. The court could have found this to have been the intention of the parties in converting their tenancy in common into a joint tenancy.

■ We observe, finally, that the divorce decree did not assign to the plaintiff her husband's share of the real estate, although the trial court possessed authority to do so. RSA 458:19. Rather, it simply disencumbered the realty "of all right, title and interest of William Lamprey therein." Under the circumstances of this case, it could be found that the decree was intended to have the same effect on the title of the subject premises as the death of William, thus leaving each of the three remaining tenants with a one-third interest. It is by no means clear that any injustice has been done to the plaintiff by either the May 31, 1977 decree or the court's subsequent refusal to reopen the matter. We therefore affirm the trial court's ruling in regard to the plaintiff's motion to reopen.

■ This case illustrates, however, the necessity of exercising care with respect to divorce decrees affecting the title to real estate. If all or any part of the title to real estate is to be transferred to one party, it should be specifically assigned, RSA 458:19, and disencumbered from all claims of the other party.

*Exceptions overruled.*

All concurred.